Allen, J.
On the 21st day of January 1842 George Morris and his son Tandy G. Morris, entered into an agreement which recited that George Morris had put into the hands of T. G. Morris certain bonds, one on Q-gjland Ballard for 3067 dollars 26 cents, one on Lewis Collins for 1131 dollars 74 cents, and one on Mordecai Collins for 718 dollars 48 cents, all of which bonds were to be accounted for to the said G. Morris, in the way which the parties would state; and to prevent any difficulty between father and son, they agreed to refer the matter of payment of said bonds, and all other matters with regard to money transactions between them (making no exceptions as to dates) to the award of two arbitrators, who, if they could not agree, were authorized to select an umpire. The arbitrators entered upon the enquiry submitted to them, and not being able to agree upon all the matters in controversy before them, they selected an umpire; and an award was made on the 28th January 1842, and signed by the two arbitrators and the umpire. By this award, the arbitrators and umpire, after reciting that they had been appointed to determine some differences between the said George and Tandy Morris, touching claims which George Morris had against his son on account of certain bonds assigned by George to Tandy, and claims of Tandy against his father on account of moneys due for services rendered, and articles furnished and moneys paid and advanced by Tandy to and for his father, decided that Tandy was entitled to and should receive from his father the sum of 1726 dollars 81 cents, with interest from the date of the award until paid.
On the 23d of June 1842, George Morris filed a bill of injunction in-the Circuit court of Orange, in which he alleged that being old and infirm, and confiding in his son Tandy, he assigned him a bond on Mordecai Collins. That the bond was assigned for reasons set *639 forth in the bill, bnt with an express agreement that Tandy was to collect the same and pay over the money to him, deducting his costs and charges. That his son ■ had recovered a judgment on the bond and issued execution: That learning that Tandy claimed the judgment as his own, he required him to retransfer it, but to his surprise, Tandy refused to do so, alleging he had purchased the bond. After some other details in relation to this bond, not material to be set forth, the bill prayed for an injunction to restrain his son from collecting the money, and for general relief.
Tandy G-. Morris answered, denying that the bond was placed in his hands for collection only, but on the contrary, alleging that it was assigned to him for a valuable consideration paid to his father. On the 18th November 1842, the cause being heard on a motion to dissolve, the injunction was dissolved. The claim set up to the bond on Mordecai Collins, was the only claim preferred in this bill. It was one of the bonds recited in the articles of submission of the 21st January 1842, and had been passed upon by the award of the 28th of January. Yet, for some cause unexplained in the record, neither in the bill nor answer was any allusion made to the award.
After the dissolution of the injunction the appellant filed an amended bill, in which he gives a full and detailed statement of the controversy with his son, growing out of- the assignment of the three bonds described in the articles of submission before referred to. He avers that at the time of making the assignment he took from his son an acknowledgment in writing, to the effect that he was to account for all the money received on the bonds, and besides such acknowledgment, a written promise that he would when required give adequate security to pay what might come into his hands as the ostensible assignee of the bonds. The bill further details the circumstances which he thinks *640 justifies him in charging his son with having purloined the said acknowledgment and promise in writing; sets forth the difficulties to which the loss of such testimony subjected him, the proposition of his son to arbitrate the controversy, and his reluctant assent to such arbitration, the circumstances attending the preparation of the submission bond, the proceedings of the arbitrators and umpire and their award, an office copy of which was filed with and prayed to be taken as part of the bill. The bill then avers that Tandy Gr. Morris founding himself upon the decision in his favor, had ever since claimed to be absolutely entitled to the bond on Mordecai Collins in dispute, besides claiming the large sum awarded to him, without venturing however to sue for it; and avers that it is obvious that as long as the award shall stand in force, it will afford his son sufficient pretext for claiming the amount of the bond of M. Collins as his own property, and will be an insuperable barrier to his obtaining relief in respect to that debt which he was seeking to recover by his original and amended bill. It then proceeds to set forth his various objections to the award, alleging that the arbitrators and umpire misconstrued the terms of the submission by going into an investigation of claims for services and other matters not having regard to the money transactions of the parties, and that the arbitrators were guilty of numerous other acts, which are elaborately detailed, of the grossest irregularity. That their proceedings evinced gross partiality to his adversary, and that the arbitrator and umpire who concurred in the award, were guilty of corruption. He therefore prays for the reasons assigned, that the award should be set aside and the copy delivered to T. Gr. Morris broiight into court and canceled, and his right to the bond of Mordecai Collins be vindicated; and to save further litigation, that his right to the proceeds of the other two bonds, one on Lewis Collins, the other on *641 Ballard, should also be vindicated. And the bill concludes with prayers for an account of the proceeds of said bonds, and for general relief.
The appellee in his answer, after , responding to the various allegations of the appellant in regard to their dealings and controversy, which it is unnecessary in my view of this case further to notice, comes to that portion of the amended bill which seeks to impeach the award, and avers that the proposal to arbitrate came from his father; insists upon the awards being within the terms of the submission, and that everything decided by the award was contemplated and intended as the subject of reference by both parties from the time of the submission down to the moment when the award was made. He denies that either the arbitrators or umpire acted irregularly or against the rules of law, or showed any partiality to the appellee, or were guilty of any corruption; and he insists that the award is right in all its parts, was rightly made up and announced; denies that it can be opened or reinvestigated; maintains that it ruled and controlled the rights of the parties in the premises; and claimed the full benefit of it.
The parties being thus at issue upon the validity of this award, proceeded to take their testimony, some of it tending to prove and disprove the allegations of misconduct and fraud and forgery, reciprocally charged by the father against the son and the son against the father; and much of the evidence tending to sustain and repel the charges of irregularity, misbehavior, partiality and corruption on the part of the arbitrators and umpire. In this condition of the cause, an order was entered on the 4th of May 1844, by the consent of the parties, referring the cause to Charles S. Jones, whose award should be final, and should be made the decree of the court. The arbitrator was to govern himself by the following principles, agreed on *642 between the parties: He was to make up his award upon the pleadings, papers and evidence then filed in • the cause, without further testimony, and without the interference of parties or others, except that if the arbitrator should be at a loss upon any point, or the counsel should certify that the examination of any witness was indispensable to having justice done to the party, the arbitrator should examine such witness in the presence of one of the counsel on each side and of no other person. The order contained a provision for arguments, directed the award should be completed and filed at least one month before the next term of the court, unless the parties should agree in writing to prolong the time; and further provided that if the arbitrator failed to render an award within the time and in the manner prescribed, or if he should render one, and such award should not for any reason be a final determination of the cause, then the parties were to stand in all respects precisely as they then stood, and in the same plight and condition; and the said Tandy Gr. Morris should be at liberty to insist on any objections to the jurisdiction of the court or the frame of the bill, and have the same benefit of the award referred to in the bill, as he then might have, so that the order in the event supposed should have no influence on the cause or the respective positions of the parties in reference thereto, but should be regarded as a nonentity. And here it may be as well, before tracing the history of the case farther, to en-quire what was the extent of the submission to this arbitrator as contained in the order of court. The ■original bill merely claimed the amount of the Mordecai Collins bond, and was silent as to the award; nor did the answer set it up in bar of the claim. But the amended bill brought the whole subject of controversy before the court. The bond on Mordecai Collins and two other bonds, are the bonds named in the submission of the 21st January 1842, the matter of pay *643 ment of which they agreed to refer. The arbitrators in their award describe the claim of George Morris upon which they were acting, as a claim on account of certain bonds assigned by George Morris to his son ; and upon this claim on the one side, with the rebutting claims on the other, they proceeded to act, and their award, if valid, finally disposed of the claims on both sides, by deciding that Tandy G. Morris was entitled to a certain sum which they awarded to him. The appellant therefore truly stated in the amended bill filed by him that it was obvious as long as the award should stand in force it would interpose an insuperable barrier to his obtaining any relief in respect to the bond on Mordecai Collins or either of the other bonds. His claim to the proceeds of these bonds had been j>assed upon by the arbitrators. It was res adjudicata, and could never be revived whilst the award continued in force. The validity of the award became, therefore, the main subject of controversy in the cause. Ho other, question involved could be looked into until it was determined whether the award should stand. The ajipellee in his answer maintained its validity, claimed the benefit of it, denied the right of the appellant to go behind it, and insisted upon it as controlling the rights of the parties involved in that suit. This was the issue made up by the pleadings, and to this issue the testimony was mainly directed. In this state of things the parties, by a consent order, referred the cause to an arbitrator, whose award was to be final and to be made the decree of the court. What did they refer by this order? The cause as it then stood. And what question was involved in the cause? The pleadings which have been referred to show that the main, and until determined one way or the other, the sole question was the validity of the award. To leave no doubt as to their intent, they declare that he is to make up his award on the pleadings, *644 papers and evidence then filed in the canse. The issue by the pleadings was as to the validity of the award; the prayer of the bill was to have it set aside and canceled; the award was a paper in the cause, and the evidenee on each side was mainly directed to the issue thus made up by the pleadings. The arbitrator stood in the place of the court. He was the substituted and selected judge of the parties to decide that cause upon all the issues of law and fact raised by the pleadings; and a judge whose decision was to be final. It could not be pretended that, upon the issues as made by the pleadings in the cause, the court, if the case had been submitted for hearing, would not have been constrained to consider first, whether the award was or was not valid. If valid, upon the concession of the appellant in his bill, it barred all further relief. In like manner the main question submitted to the arbitrator was as to the validity of the award ; and it was as competent for him, as it would have been for the eourt in the case supposed, to have rendered his award confirming the former award. The parties in submitting a cause upon jileadings and proofs, raising principally the question whether an award was or was not valid, cannot be supposed to have intended to set aside the award entirely with a view to an enquiry into all the matters embraced in that award. That they did not so intend in this case is made more manifest from the fact that they supposed it possible the arbitrator might decide on the pleadings, papers and evidence then in the cause without further testimony. Provision, it is true, was made for further testimony, but he could, according to the terms of the submission, have acted finally on the case as it then stood. Yet the evidence in regard to some of the accounts acted upon by the arbitrators, and the vouchers in respect to most of the items contained in the statement furnished by the first arbitrators, were not then and have *645 not since been filed or placed in the record. If the last arbitrator had supposed any of the allegations going to the validity of the whole award were sustained, and the award should be set aside entirely, this evidence and these vouchers would have been necessary to enable him to make out a new award upon all the matters in controversy between the parties. The provision in the latter part of the oi’der that it should be regarded as a nonentity in case no award, or one which did not finally determine the controversy, was made in the time and manner prescribed, does not change the construction of so much of the order as pointed out the duty of and conferred authority on the arbitrator. The reservation of the right to have the same benefit of the award as if no such reference had been made, so far from showing an intention to abrogate the award for the purposes of the reference, indicates a determination to insist upon it under all eircumstances; before the arbitrator if he acted, if not, before the eourt.
Considering the submission, then, as leaving the award in full force, and authorizing the arbitrator to determine upon its validity in whole or in part, it becomes necessary to ascertain from the face of his award, how he has construed his authority. The. arbitrator states in his award that he had examined the bond of submission to the first arbitrators, the award of the arbitrators and umpire, the bills and answers, pleadings of counsel and depositions to annul the award on one side and support it on the other; and after mature deliberation, he had come to the conclusion that there was no testimony in the cause to prevent the award from being the basis of his statements. He therefore adopted it, and charged the appellant with the amount, subject to a deduction for certain errors and omissions, which he proceeds to make, and ascertains the balance against the appellant by this mode of proceeding to be *646 951 dollars 81 cents, which, with interest, he awards against him. He further awarded that Tandy Gk Morris should assign to the appellant without recourse to him, a bond taken from Ballard for the alleged balance of his debt, a matter embraced in the controversy as raised by the amended bill, but not comprehended in the first award. It thus appears from the face of 'the award, that the arbitrator supposed that the principal matter referred to him was the validity of the award impeached by the amended bill. He states that he had carefully examined the submission, pleadings and evidence to annul it on one side and support it on the other. There is nothing to show that he took up the claims of the parties as a new question, and it is manifest he did not; for the first arbitrators made up their award from the statements of the parties and the vouchers laid before them. There is no evidence in the record of those statements in respect to the items of charge on either side, nor were the vouchers exhibited to the last arbitrator. If we could look beyond the award to the deposition of the arbitrator, he states that he considered the first award binding on the parties on its face, but that they had a right to change it by any additional testimony, or by showing any error on its face, and so far as it appeared on its face or was shown by testimony to be incorrect, he corrected it.
Considering for the reasons already given, that it was the duty of the arbitrator, as it would have been of the court to which he was substituted, first to determine whether the award had been successfully impeached upon any of the issues made by the pleadings or the proof, that the want of authority, the irregularity, the partiality, the corruption of the arbitrators, were questions he had to pass upon, it seems to me the arbitrator did not misconstrue or exceed his authority in deciding upon the conduct of the first arbitrators ; and if he thought the award could not be impeached *647 for any of the causes alleged in the pleadings or made out by the evidence, it was competent for him to adopt it as the basis of his award. This it appears from the face of the award he has done, and from his decision on the questions submitted to him, there is no appeal. Where the submission clearly shows, as I think it does in this case, that the whole matter in controversy, and every question of law and fact arising in the cause was left to the arbitrator, who was substituted to the place of the court, and whose decision was to be final; and the arbitrator, without referring any question to the consideration of the court, makes a general award deciding the questions submitted to him, the award is conclusive. The rule of law and equity requires that the reasons for setting aside an award must appear on the face of it; or there must be misbehavior or corruption in the arbitrators, or some palpable mistake. Though the court upon a review of the facts might arrive at a different conclusion from the arbitrator, it cannot for this reason set aside the award. The court can look to the testimony for the purpose of determining from the evidence and other circumstances, whether the error was so gross and palpable as to show misbehavior or corruption in the arbitrator, but not to correct any error of judgment to which in the view of the court, the arbitrator may have innocently fallen. Otherwise most awards, instead of ending, would be themselves the foundation of controversies, and courts would be called upon to exercise an appellate jurisdiction over the proceedings of arbitrators in the country upon proof of what may have transpired before them.
I think therefore that unless some error on the face of the last award or palpable mistake or misbehavior of the last arbitrator is shown, his award concludes every matter alleged as to the want of authority or misbehavior of the first arbitrators. Until his award is successfully impeached, the party should not be permitted to go behind it.
*648 No error or mistake appears on. the face of this awar<I. It was returned by the arbitrator to the fall term of the court in 1844, and lay until the spring term ^845. No rule or proceeding was taken to impeach An affidavit of counsel was filed tending to show some misunderstanding growing out of conversations before the submission as to the principles which should govern an arbitrator upon such a reference. The affidavit shows no misbehavior and presents no objection to the award. The presence of the appellee for a short time during the examination of a witness, is sufficiently accounted for both by the affidavit of the counsel and of N. Mills. He was called in it appears, on the suggestion of the counsel of the appellant, for the purpose of obtaining information of the time of a particular occurrence. The court properly overruled the objections presented by this affidavit, and pronounced a decree in conformity with the award.
After this decree, the appellant on the 7th of October 1846, filed by the leave of the court, a bill of review to the decree, in which he goes into all the matters of controversy between himself and his son, which were passed upon by the first arbitrators and concluded by their award. Nothing is alleged or shown impeaching the second award for misbehavior in the abitrator, and upon the coming in of the answer, the court dismissed the bill with costs; a decision clearly right, if the arbitrator did not misunderstand the terms of the submission by the order of court; for if he acted in conformity therewith, there was no error in the decree made in pursuance of the award. I am of opinion that the decree appealed from should be affirmed.
Daniel and Lee, Js. concurred in the opinion of Allen, J.
Moncure and Samuels, Js. dissented.
Decree affirmed.